### SANDER v. JANSSEN DAIRY CORPORATION.

Civ. A. No. 1226.

District Court, D. New Jersey.

Dec. 19, 1940.

Milton E. Mermelstein, of New York City (Guggenheimer & Untermyer, Abraham Shamos, Edward Menden, all of New York City, of counsel), for plaintiff.

Lichtenstein, Schwartz & Friedenberg and Julius Lichtenstein, all of Hoboken, N. J. (White & Staples, by Thomas Raeburn White, all of Philadelphia, Pa., of counsel), for defendant.

FAKE, District Judge.

The plaintiff is a citizen of New York. The defendant is a New Jersey corporation. The amount involved exceeds $3,000, and no issue is raised as to the jurisdiction of the court.

The defendant corporation has recently instituted proceedings under Section 27 of the General Corporation Act of New Jersey, Revised Statutes of New Jersey, 1937, 14:11–1, 11–2, and 11–3, N.J.S.A. 14:11–1 to 14:11–3, for the purpose of consummating a plan of recapitalization. Plaintiff, a minority preferred stockholder, alleges violations of her legal and equitable rights in the terms and conditions of the plan and seeks injunctive relief. A rule to show cause seeking a temporary restraint of the consummation of the plan was issued, which resulted in a stay by consent until

the question of a preliminary injunction might be examined into by the court.

The defendant's present capital stock consists of: (a) 4,000 shares of 5% Prior Preferred Stock of the par value of $100 each, all of which are issued and outstanding and owned by Philadelphia Dairy Products Company, Inc.; (b) 10,000 shares of 5% Preferred Stock of the par value of $100 each, all of which are issued, 9998 shares being presently outstanding, and 2 shares being held in the treasury of the defendant; and (c) 16,000 shares of Common Stock, without nominal or par value, 14,000 shares of which are issued and outstanding and owned by said Philadelphia Dairy Products Company, Inc.

The 5% Preferred Stock is entitled to cumulative dividends at 5% per annum, and to $100 per share, plus accumulated dividends (which now amount to $15 per share) in liquidation, and is redeemable at par, plus accumulated dividends.

The capital and surplus of the defendant corporation, as of September 30, 1940, were as follows:

The control of the defendant corporation rests entirely in the Philadelphia Company. As the holder of all of the defendant's Common Stock, it elects 8 of the 13 directors. Of the other 5, who are elected by the holders of the Preferred Stock, 4 are members of the Janssen family, and all are salaried employees of the defendant corporation. Of the 8 officers of the defendant corporation, 4 are also officers of the Philadelphia Dairy Products Company, Inc., and the other 4 are the same members of the Janssen family who sit on the defendant's Board.

The plan, which this action is brought to enjoin, proposes to change the capitalization of the defendant corporation into 4,000 shares of Preferred Stock of the par value of $100 each, and 10,350 shares of Common Stock of the par value of $100 each. The capital would thus be reduced from $1,835,000 to $1,235,000. It is then proposed to change the 10,000 shares of the present Preferred Stock, together with all accumulated dividends, into 4,000 shares of the new Preferred Stock (at the ratio

| Capital: | Shares Outstanding | Par Value | |
|---|---|---|---|
| 5% Prior Preferred Stock........ | 4,000 | $100 | $ 400,000 |
| 5% Preferred Stock.............. | 9,998 | $100 | 999,800 |
| Common Stock .................. | 14,000 | None | 435,000 |
| | | | $1,834,800.00 |
| Earned Surplus ................................................ | | | 211,691.93 |

The net worth of the defendant corporation on September 30, 1940 (i. e., assets less liabilities) was $2,046,491.93.

The net profits for the past 3 years and the current year to September 30th were:

1937 ........................ $32,125.22
1938 ........................ 44,305.41
1939 ........................ 66,293.34
1940 (to September 30 and before income and surplus taxes) ............. 86,333.29

All of the Prior Preferred Stock and all of the Common Stock of the defendant corporation are held by the Philadelphia Dairy Products Company, Inc. The Preferred Stock is divided among 50 or 60 holders, but more than 6,000 shares, or 60%, are held by members of the Janssen family, and an additional 1500 shares, or approximately 15%, are held by employees or the families of former employees.

of 10 for 4); to change the 4,000 shares of present Prior Preferred Stock into 4,000 shares of new Common Stock (share for share); to change the 14,000 shares of old Common Stock issued and outstanding into 4,350 shares of new Common Stock (at the approximate ratio of 3 for 1); and to change the 2,000 shares of old Common Stock, authorized but not issued, into 2,000 shares of new Common Stock (share for share) to be authorized but not issued.

With respect to the Preferred Stock, of which the plaintiff and the other objecting stockholders are owners, the effect of the plan would be:

(1) To wipe out accumulated dividends of $15 per share; (2) to reduce the future dividend rate on their stock from 5% to the equivalent of 2%; (3) to reduce their rights on liquidation from $100 per share, plus accumulated dividends, to the equiva-

lent of $40 per share and accumulated dividends; (4) to make their stock redeemable at the equivalent of $40 per share, instead of $100 per share, plus accumulated dividends.

The consideration offered to the holders of the Preferred Stock for the reduction of their holdings as aforesaid is that their holdings being now subject to $400,000 of the Prior Preferred Stock, they would, under the plan, have the first position and would be entitled to dividends on their reduced holdings before dividends on any other stock.

The question is whether or not the forced acceptance by the plaintiff of 40% of her present holdings as above outlined, would result in an inequitable or unconscionable reduction in her rights whereby other holders of defendant's securities may be given an unfair advantage.

■ It appears that the dividends on the Prior Preferred Stock have always been met but no dividends save one of $1 a share have ever been paid on the Preferred Stock. The failure to pay dividends on the Preferred Stock can not be criticized at this stage of the case because it does not appear with reasonable certainty that the officers and directors of the corporation have committed any acts outside the sphere wherein the law of the state allows them full discretionary powers. True, they have, since the corporation's rehabilitation under 77B, 11 U.S.C.A. § 207, in 1935 or 1936 paid off some $300,000 of mortgage debt, but this Court can not set up its judgment as against that of the officers and directors on this phase of the case. Nor would it be inclined to do so if it had the power, since the cancellations of the mortgages were obtained for considerably less than their face amounts, and from the evidence now before the Court, their action was wholly justified.

Again, it appears that the corporation has a surplus but the amount thereof is not excessive in view of its monthly requirements, and here also it is not within the power of the Court to criticize the management in thus protecting the corporation against evil days.

None of the salaries paid to officers and directors appear to be excessive, nor are overhead expenses attacked by the plaintiff. In fact, plaintiff concedes that no criticism can prevail as to these items.

■ The issue is thus pared down to the question as to whether or not the desire and willingness of the holders of 82% of the preferred stock to reduce their holdings from $1,000,000 to $400,000 for the purpose of receiving dividends at 5% on the reduced amount and obtaining a prior position in the corporate set-up, is casting an unwarranted loss upon the plaintiff. In the absence of a complete appraisal of the corporation's assets and a study of its liabilities as might appear on final hearing, the Court can not at this stage of the case form a reasonable conclusion as to the value of the preferred stock. This, however, would not necessarily constitute a controlling factor. The section of the Corporation Act above cited in the absence of fraud actual or constructive expressly allows the will of two-thirds in interest of each class to do just what is attempted here and when plaintiff became a stockholder her rights were thereby limited.

■ While it is true the Philadelphia Dairy Products Corporation may not suffer by virtue of the plan because; subject to 5% per annum on $400,000 it may declare dividends on the Common Stock, all of which it holds, and thus lose nothing and perhaps gain in the way of dividends. There is nothing sufficient in this, at this point in the case, to sustain the contention that such an arrangement is unconscionable. Sight must not be lost of the fact that while the Philadelphia corporation now holds a prior position on liquidation to the extent of $400,000 plus dividends, under the plan it will pass to a secondary position to the extent of the like amount.

Moreover, the management, as appears by affidavit, take the position that the future of the business is not very encouraging and the probabilities are that by virtue of governmental regulation, price fixing and other contemplated burdens, the net earnings will be reduced below those shown in recent past years. Here again the Court can not, if at all, inject its views contrary to those of the management in the absence of more convincing evidence than is now disclosed by the record.

At the moment it does not appear that anything more serious is involved than that the desire of 82% of the Preferred Stockholder class desires to accept a certainty at this time of 40% of a loaf rather than suffer in the future, as in the past, with no bread at all and no certainty as to the time of its production.

The stay will be vacated and a preliminary injunction is denied.